UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
K&M INTERNATIONAL, INC.,       )
                               )
        Plaintiff,             )
                               )
    v.                         )    C.A. No. 14-428 S
                               )
RHODE ISLAND NOVELTY, INC.,    )
                               )
        Defendant.             )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Before the Court is Plaintiff K&M International, Inc.'s ("K&M") Motion for Partial Summary Judgment seeking judgment as a matter of law on two of the seven counts alleged in its First Amended Complaint against Defendant Rhode Island Novelty, Inc. ("RINCO"). (Pl.'s Mot. for Partial Summ. J. 1, ECF No. 28.)  For the reasons that follow, K&M's motion is GRANTED IN PART and DENIED IN PART.

I. Background

K&M and RINCO are both designers and distributors of toys that are sold throughout the country in gift shops and concession stands located on the premises of zoos, museums, and aquariums. (Pl.'s Statement of Undisputed Facts ("SUF") ¶¶ 1, 2, ECF No. 30; Nowak Aff. ¶ 8, ECF No. 42-2.)  The toys include

plush animals and polyvinyl chloride ("PVC") animal figures. (SUF ¶¶ 1, 2.) The instant litigation is not the first time these parties have tangled over Plaintiff's copyrights for its plush toys. In 2006, K&M sued RINCO for trademark and copyright infringement, alleging that RINCO had infringed K&M's "WILD REPUBLIC" trademark when RINCO used "WILD ADVENTURES" in connection with its toy products. (See CA No. 06-159ML Am. Compl. ¶¶ 2-3, ECF No. 19.) The parties ultimately settled this litigation and signed a confidential settlement agreement. (CA No. 14-428S Am. Compl. ¶ 3, ECF No. 18.)

Since the first round of litigation, K&M and RINCO have continued to develop their product lines, including new plush toy animals and PVC toys. K&M has registered copyrights for its designs of at least four new plush toys (a pink hippopotamus, a penguin chick, a river otter, and a harbor seal) and has continued to use its "WILD REPUBLIC" trademark. (Pl.'s SUF ¶¶ 3, 5, 25.) RINCO has acquired designs for at least four of the same animals and has been marketing and selling these new plush toys. (Labsan Aff. ¶¶ 25-30, ECF No. 42-3.) In addition, RINCO has produced several sets of toys using "ADVENTURE PLANET" as a trademark and brand name, and has also used the terms "wild" and "wildlife" on the packaging and in the marketing of some of these toys. (Id. ¶¶ 7, 9, 11.)

2

In 2014, K&M initiated the present litigation against RINCO, alleging that RINCO has: (1) breached the 2007 settlement agreement by using the word "wild" in marketing and selling its toy products; (2) infringed K&M's trademarks and copyrights; (3) engaged in common law unfair competition; and (4) benefitted from unjust enrichment as a result. (Am. Compl., ECF No. 18.) K&M is moving for summary judgment on two of the seven counts brought against RINCO: copyright infringement with respect to K&M's registered copyrights for the pink hippopotamus, penguin chick, river otter, and harbor seal (count I) and breach of contract (count VI). (Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mem.") 1, ECF No. 29.)

## II. Standard of Review

"Summary judgment is proper only if the record, read favorably to the non-moving party, reflects no genuine issues of material fact and the undisputed facts indicate that the movant is entitled to judgment as a matter of law." T-Peg, Inc. v. Vermont Timber Works, Inc., 459 F.3d 97, 111 (1st Cir. 2006) (quoting Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Fed. R. Civ. P. 56(c))). "[A] party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a

trialworthy issue." <u>Nat'l Amusements, Inc. v. Town of Dedham</u>, 43 F.3d 731, 735 (1st Cir. 1995) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)).  "To satisfy the criterion of trialworthiness, and thereby forestall summary judgment, an issue must be 'genuine,' that is, the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion . . . must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." <u>Id.</u> (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986)) (other citations omitted).  As the First Circuit has stated, "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve . . . ." <u>Id.</u> (quoting <u>Mack v. Great Atl. & Pac. Tea Co.</u>, 871 F.2d 179, 181 (1st Cir. 1989)).  A material fact is one that "has the capacity to sway the outcome of the litigation under the applicable law." <u>Id.</u> (citing <u>Liberty Lobby</u>, 477 U.S. at 248) (other citations omitted).

III. Discussion

    A. Breach of Contract Claim

    As part of the 2007 Settlement Agreement, RINCO agreed that it would "not use as a trademark or brand name the terms "WILD" and "REPUBLIC," either as a word or syllable, alone or as part

of a composite mark, word, symbol or design element, in connection with the marketing, promotion, manufacture, distribution and/or sale of toy products anywhere in the world." (Pl.'s Mem. 10; 2007 Settlement Agreement ¶ 3(h), Malbin Decl. Ex. 14, ECF No. 33-4 (filed under seal).)

K&M argues that RINCO breached the 2007 Settlement Agreement by using the term "wild" in two separate ways: first, by marketing and distributing toy products with logos "prominently" reflecting the term "wild" on the packaging, and second, by marketing toy lines "identified by names containing the term 'wild.'" (Pl.'s Mem. 10.)  K&M contends that both of these uses constitute use as a brand name because each logo or name on toy packaging is a symbol that identifies RINCO's products. (Id. at 12.)  K&M also argues that these uses of the term "wild" constitute use as a trademark within the definition applied by the Lanham Act, 15 U.S.C. § 1127. (Id. at 13, 15.)

For its part, RINCO argues that it has not used the term "wild" as either a brand name or trademark, but instead as a generic, descriptive term of its products and alongside its Adventure Planet trademark and brand name. (Def.'s Mem. in Supp. of Obj. ("Def.'s Mem.") 1, 5, 15, ECF No. 42-1.)  According to RINCO, paragraph 3(h) of the 2007 Settlement Agreement specifically prohibited the use of the term as a brand name or trademark but not from using the terms "wild" and "republic" as

descriptive terms. (Id. at 13-14.)  RINCO also asserts that the plain meaning of paragraph 3(h) prohibits it from using the terms "wild" and "republic" together as a brand name or trademark, but not separately, and that it could not have breached the 2007 Settlement Agreement because it has not used these terms together. (Id. at 1, 5, 9.)  RINCO contends that any determination regarding the placement, use, and context of its use of the term "wild" is too fact-specific to undertake at this summary judgment stage of the litigation. (Id. at 11.)

"To succeed on a breach of contract claim under Rhode Island law, a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010) (citing Petrarca v. Fid. & Cas. Ins. Co., 884 A.2d 406, 410 (R.I. 2005) (additional citations omitted)). There is no dispute that the 2007 Settlement Agreement exists as a contract between the parties and that this agreement is governed by Rhode Island law. (Pl.'s Mem. 10; Def.'s Mem. 10.)

When the Rhode Island Supreme Court reviews the terms of a settlement agreement, it applies its general rules of contract construction. Furtado v. Goncalves, 63 A.3d 533, 537 (R.I. 2013) (citing Rivera v. Gagnon, 847 A.2d 280, 282, 284 (R.I. 2004)). "[T]he existence of ambiguity vel non in a contract is an issue

of law to be determined by the [C]ourt." Id. (quoting Derderian
v. Essex Insurance Co., 44 A.3d 122, 127 (R.I. 2012) (additional
quotations omitted)).   It is well settled that "[a]n ambiguity
in a contract cannot be resolved on summary judgment." Garden
City Treatment Ctr., Inc. v. Coordinated Health Partners, Inc.,
852 A.2d 535, 541 (R.I. 2004) (quoting Rubery v. Downing Corp.,
760 A.2d 945, 947 (R.I. 2000) (per curiam) (additional
quotations omitted)).

"In assessing whether contract language is ambiguous,
[Rhode Island] give[s] words their plain, ordinary, and usual
meaning. . . .   The subjective intent of the parties may not
properly be considered . . , [instead the Court] consider[s] the
intent expressed by the language of the contract." Furtado, 63
A.3d at 537 (quoting Derderian, 44 A.3d at 128 (additional
quotations omitted)).   "[A] contract is ambiguous only when it
is reasonably and clearly susceptible of more than one
interpretation." Garden City Treatment Ctr., 852 A.2d at 541-42
(quoting Rubery, 760 A.2d at 947 (additional quotations
omitted)).   When assessing whether language in a contract is
ambiguous, the Court is to "refrain from engaging in mental
gymnastics or from stretching the imagination to read ambiguity
. . . where none is present.'" Young v. Warwick Rollermagic
Skating Ctr., Inc., 973 A.2d 553, 559 (R.I. 2009) (quoting
Mallane v. Holyoke Mut. Ins. Co. in Salem, 658 A.2d 18, 20 (R.I.

1995) (additional citations omitted)).  In addition, "the mere
fact that parties differ as to the meaning of an agreement does
not necessarily mean that the agreement is in fact ambiguous."
Id. at 560.

      The Court finds that the sentence at issue in K&M's breach
of contract claim is not reasonably susceptible to more than one
interpretation and is therefore not ambiguous.  RINCO agreed not
to use the terms "WILD" and "REPUBLIC" as a trademark or brand
name, "either as a word or syllable, alone or as part of a
composite mark, word, symbol or design element, in connection
with the marketing, promotion, manufacture, distribution and/or
sale of toy products anywhere in the world." (Pl.'s Mem. 10;
2007 Settlement Agreement ¶ 3(h).)  Despite the use of the
conjunction "and" instead of "or," the plain and ordinary
meaning of the sentence indicates that RINCO agreed not to use
either term as a trademark or brand name.  Contrary to RINCO's
proposed interpretation, paragraph 3(h) did not only prohibit it
from using the words "wild republic" together, but from using
either word pursuant to the other limitations articulated in the
remainder of paragraph 3(h).

      The more difficult issue is whether a genuine issue of
material fact exists with respect to K&M's claim that RINCO
breached paragraph 3(h) of the 2007 Settlement Agreement when it
used the term "wild" on its packaging and as part of the name in

some of its product lines, and that these uses constitute use as a trademark or brand name.

K&M provided screenshots from RINCO's website to support its arguments that RINCO breached the 2007 Settlement Agreement by using "wild" as a brand name and trademark on the packaging of toys as well as by marketing toys with the term "wild" in the product's name. (Malbin Decl. Ex. 12, ECF No. 32-12.) The screenshots show that the word "wild" is used on RINCO's packaging in a variety of toy names; for example, Wildlife Discovery Expedition, Wild Animals Pail Set, Wildbios Northern Trek pack, Wild West Ranger, and Wild-Action playset. RINCO's "Adventure Planet" logo also appears on each of the toys depicted in the screenshots, and always at the top left hand corner of the product.

In response, and in support of RINCO's argument that the term "wild" was used as a generic, descriptive term and not as a brand name or trademark, RINCO provided an affidavit from Jeremy Labsan, an Imports Manager for RINCO. Labsan asserts that the "Wildlife Discovery Expedition" toy is simply one variety of a more expansive "Discovery Expedition" line of toy products. (Labsan Aff. ¶ 9.) Labsan also asserts that, depending on the content of each toy package, the name of the "Discovery Expedition" line of toys will be preceded by either "wild," "aquatic," "journey," "jungle," or "northern trek," and RINCO

9

provides excerpts from its 2015 product catalog to support this assertion.[1] (See Labsan Aff. Ex. A, ECF Nos. 42-5, 42-6.)

RINCO's 2015 product catalog excerpts demonstrate that a genuine issue of material fact exists as to whether its use of the word "wild" was, as it contends, simply part of the name of a toy within a product line under the "ADVENTURE PLANET" trademark, or its use of the word "wild" was as a trademark or brand name and therefore a breach of the 2007 Settlement Agreement.  As a result, the Court concludes that whether RINCO breached the 2007 Settlement Agreement is a factual determination to be made by the trier of fact, and DENIES K&M's Motion for Summary Judgment on count I.

B. Copyright Infringement Claim

K&M argues that it is entitled to summary judgment on its copyright infringement claim regarding its pink hippopotamus, penguin chick, river otter, and harbor seal because: (1) it owns valid copyrights of its original designs for these four plush toys and has the certificates of registration; (2) it has evidence that RINCO copied K&M's designs; and (3) the degree of similarity of RINCO's plush toys' design elements to K&M's

---

[1] Labsan also asserts that the term "wild" was similarly substituted in other product lines such as the "adventure pod" line of toys products. (Labsan Aff. ¶ 8.)  The excerpts from the 2015 product catalog support this assertion.

copyrighted toys' design elements. (Pl.'s Mem. 18, 19-24, Pl.'s
Mem. Exs. 1, 4, ECF No. 32.)

RINCO counterargues that K&M has not provided any "direct"
or "competent" evidence to support its claim that RINCO copied
the design of the four plush toys at issue, and that attendance
at the same trade shows is insufficient evidence to establish
that RINCO copied the designs. (Def.'s Mem. 20.)  RINCO outlines
the history of the designs of its versions of the plush animals
at issue to demonstrate that the designs were acquired through
overseas vendors. (Id. at 21-22; Labsan Aff. ¶¶ 26-30.)  RINCO
also argues that, despite K&M's attempt to demonstrate the ways
in which the design elements of RINCO's version of the plush
toys are substantially similar to K&M's plush toys, "an ordinary
observer would not confuse these products when viewed side-by-
side." (Id. at 23.) Moreover, RINCO distinguishes the design
elements of each of its plush toys from K&M's designs. (Id. at
23-30.)

"To prevail on a copyright infringement claim, a party must
prove both control of a valid copyright and copying of original
elements of the work by the putative infringer." Coquico, Inc.
v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009) (citing
Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361
(1991)).  Here, there is no dispute that K&M has valid
copyrights for the design of the four plush toys at issue.

11

(Pl.'s Mem. 18; Def.'s Mem. 19.)   The issue before the Court on this claim, therefore, is whether K&M is entitled to judgment as a matter of law that RINCO copied the original design elements of the four plush toys at issue.   See Coquico, 562 F.3d at 66.

To prove that a valid copyright has been infringed, a plaintiff must prove two elements that are highly fact-specific: first, that "the putative infringer copied the protected work," id. (citing Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 60 (1st Cir. 2000)), and second, "that the copying was so egregious as to render the allegedly infringing and infringed works substantially similar." Id. (citing Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995)) (emphasis added).   "A party may demonstrate actual copying through either direct or circumstantial evidence." Id. (citing Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 33 (1st Cir. 2001)). "Proving actual copying by direct evidence is generally a difficult task, as it is the rare case in which the specific act of copying was witnessed, observed, or recorded." Society of Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29, 49 (1st Cir. 2012) (citing Johnson v. Gordon, 409 F.3d 12, 18 (1st Cir. 2005) ("Plagiarists rarely work in the open and direct proof of actual copying is seldom available.")).   "For this reason, parties typically rely on circumstantial evidence to prove that the defendant had access to the protected work and

that the resulting product, when fairly compared to the original, was sufficiently similar that actual copying may properly be inferred." Id. (citing Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 606 (1st Cir. 1988) (additional citations omitted)).

"To gauge substantial similarity in cases involving non-technological consumer products, courts often employ an 'ordinary observer' test. Under that metric, the allegedly infringing work will be deemed substantially similar to the allegedly infringed work if an ordinary observer would be disposed to overlook any disparities in the works." Coquico, 562 F.3d at 67 (citing Concrete Mach., 843 F.2d at 607). "[S]ubstantial similarity does not mean absolute identicality." Id. at 70. "[T]he determination of substantial similarity is ordinarily assigned to the factfinder," although when "[f]aced with a motion for summary judgment . . . a court [considers] whether a reasonable jury could conclude that 'an ordinary observer' examining the two [products] would see the defendant's version as a wrongful appropriation of the plaintiff's protected expression." Harney v. Sony Pictures Television, Inc., 704 F.3d 173, 179-80 (1st Cir. 2013).

Beginning with the inquiry into whether RINCO actually copied K&M's designs for the pink hippopotamus, penguin chick, river otter, and/or harbor seal, K&M has provided circumstantial

13

evidence that RINCO had access to its products in the following ways: (1) K&M's wide dissemination of these four plush toys through catalog marketing, display at trade shows, and sales around the country; (2) RINCO's attendance at seven of the same trade shows as K&M in the years after K&M distributed its plush toys but before RINCO started marketing its versions; and (3) RINCO's purchase of the design for its pink hippopotamus from the Chinese company that manufactured K&M's original design for its own pink hippopotamus. (Pl.'s SUF ¶¶ 49-53, 61-62; Chandran Decl. ¶¶ 3-5, ECF No. 48-1 (filed under seal); Labsan Aff. ¶ 26.) RINCO did not provide any evidence to dispute or counter K&M's circumstantial evidence.

The evidence submitted by both parties to support their respective positions regarding the degree of similarity of the design elements of the plush toys makes it clear that the determination of whether RINCO's versions of the four plush toys at issue are substantially similar to K&M's original designs is not easy. K&M provided photos of each of the four toys at issue, as well as photos of RINCO's versions, and persuasively argued the ways in which the design elements are substantially similar. (See Pl.'s Mem. 7-8; Malbin Decl. Exs. 2-11, ECF No. 32.) K&M asserts that each of RINCO's toys is substantially similar to K&M's design elements and that the design elements are original to K&M's toys because they are so different from

14

the natural characteristics of these animals in the wild (for example, hippos in the wild are not pink). (Pl.'s Mem. 24, Malbin Decl. Exs. 20-23.)  K&M also asserts that these animals can be designed and depicted in many different ways that are different from nature and also from its original designs, as demonstrated by numerous products sold by other companies, yet RINCO's products track closely to K&M's product characteristics. (Pl.'s Mem. 24, Malbin Decl. Exs. 17-19.)

RINCO provided a side-by-side comparison of the toys at issue in its effort to distinguish the design elements of its plush toys from K&M's plush toys. (See Labsan Aff. Exs. C, E, G, I.)  In addition, RINCO provided a comparison of each of the four toys at issue to other companies' plush toys, organized by individual design elements that K&M claims are original to its designs. (See Labsan Aff. Exs. D, F, H, J.)

The exhibits submitted by both parties demonstrate that the determination of whether RINCO's plush toys are substantially similar to K&M's copyrighted plush toys is a fact-intensive question.  This inquiry is therefore not appropriate for resolution on summary judgment.  This Court finds that genuine issues of material fact exist as to whether "an ordinary observer would be disposed to overlook any disparities in the works," Coquico, 562 F.3d at 67, and that K&M is not entitled to summary judgment on its copyright infringement claim.

15

IV. Conclusion

For the reasons stated herein, Plaintiff's Motion for Partial Summary Judgment (ECF No. 28.) is GRANTED IN PART and DENIED IN PART.  K&M is not entitled to judgment as a matter of law either on its copyright infringement claim (count I) or on its breach of contract claim (count VI).  The Court does conclude that, as a matter of law, paragraph 3(h) of the 2007 Settlement Agreement unambiguously prohibited RINCO from using "wild" or "republic" as either a trademark or brand name or pursuant to the other limitations imposed by this paragraph of the contract.

IT IS SO ORDERED.

William E. Smith
Chief Judge
Date: March 20, 2017